## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

MAPE USA, INC.,                                        Case No. 14-43123
                                                       Chapter 11
                        Debtor.

### NOTICE OF HEARING AND MOTION FOR ORDER (I) GRANTING EXPEDITED RELIEF; (II) AUTHORIZING DEBTOR'S TO USE CASH COLLATERAL ON AN INTERIM AND FINAL BASIS; AND (III) GRANTING ADEQUATE PROTECTION

TO:     The entities specified in Local Rule 9013-3

1.      Mape USA, Inc. (the "Debtor"), through its undersigned attorneys, moves the court (the "Motion") for the relief requested below and gives notice of hearing.

### PRELIMINARY HEARING

2.      The court will hold a preliminary hearing on this Motion at **10:00 a.m. on August 4, 2014**, before the Honorable Michael E. Ridgway, Courtroom No. 7 West, U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415 (the "Preliminary Hearing").

3.      Any response to this Motion as to issues to be considered at the Preliminary Hearing must be filed and delivered prior to the hearing. **Unless a response opposing the Motion is timely filed, the Court may grant the preliminary relief requested in the Motion without a hearing.**

### FINAL HEARING

4.      The court will hold a final hearing on this Motion at **9:30 a.m. on August 19, 2014**, before the Honorable Michael E. Ridgway, Courtroom No. 7 West, U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415 (the "Final Hearing").

{00201071 3 }

5.      Any response to this Motion must be filed and delivered not later than **August 14, 2014**, which is five (5) days before the time set for the hearing (including Saturdays, Sundays, and holidays). **Unless a response opposing the Motion is timely filed, the Court may grant the relief requested in the Motion without a hearing.**

6.      This Court has jurisdiction over this Motion under 28 U.S.C. §§157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1.  This proceeding is a core proceeding.  The petition commencing each case was filed on July 30, 2014 (the "Petition Date").  The case is now pending before this Court.

7.      This motion arises under §§ 363 of Title 11 of the United States Code (the "Bankruptcy Code"), and Fed.R. Bankr.P. 4001 and 9014.

<u>**SUMMARY OF RELIEF SOUGHT**</u>

8.      Debtor requests an order authorizing interim and final approval of the use of cash collateral so that Debtor may meet the ordinary expenses of operating the Debtor's business, as estimated in the cash flow projections attached hereto as <u>**Exhibit A**</u> (the "Budget"). The Debtor also seeks to grant replacement liens and make payments as adequate protection to the lender with liens in the cash collateral and the parties served with this motion.

<u>**FACTUAL BACKGROUND**</u>

9.      Debtor is a Minnesota corporation engaged in the business of the manufacture of crankshafts and related parts for use in recreational vehicles with principal assets located in Cambridge, Minnesota.   Presently, the Debtor has 21 employees and total annual sales of approximately $13 million.

10.      The Debtor has been historically profitable.   However, a combination of an expansion of the business with a second plant in Cambridge and the recession caused the Debtor to have insufficient profits and cash flow to pay its obligations in the ordinary course of business.

## LIENS IN CASH COLLATERAL[1]

11.     Bank of the West (the "Bank") appears to have a lien in cash collateral by virtue of a Credit Agreement dated April 10, 2008 and financing statements filed with the Minnesota Secretary of State on April 10, 2008 and continued on October 15, 2012.  The Bank claims that approximately $4 million is owed to it by the Debtors.  That debt consists of the following components:

(a)  A Line of Credit Note dated August 15, 2012, in the original principal amount of $2,750,000;

(b)  a Term Note dated August 15, 2012 in the original principal amount of $500,000.00;

(c)  a Master Equipment Financing Agreement dated March 28, 2012; and

(d)  a Master Progress Payment Agreement dated June 28, 2012, under which the Bank advanced funds for progress payments respecting amounts owed vendors of certain of the Equipment prior to the Debtor's acceptance of that Equipment.

12.     As of the date hereof, the Debtor's cash assets (cash, inventory and accounts) are valued by the Debtor at $162,785. See attached **Exhibit A, p.4**.  Debtor expects that the value of the cash assets will increase between the date hereof and the end of the period for which Debtor seeks authority to use cash collateral.  As of October 31, 2014, the Debtors project that value to be $1,432,882.  See **Exhibit A**.

## RELIEF REQUESTED

13.     Debtor seeks interim use of cash collateral in an amount up to $160,753 through August 19, 2014.  See **Exhibit B** attached hereto for details.  Debtor seeks final approval of use

---

[1] The lien information provided here assumes that the liens of record are enforceable against the Debtor. The Debtor reserves its right to investigate the validity and enforceability of these and other liens.

of cash collateral through October 31, 2014 per the Budget. Debtor proposes to fund its operations during this case and its reorganization through use of cash collateral.

14.     Debtor proposes to adequately protect the interests of the Bank by granting replacement liens on inventory and accounts purchased or generated after the petition date. In addition the Debtor will make the following payments to the Bank:

(a) On the 1st day of each month commencing September 1, 2014, interest at the rate of 5% per annum on the debt except for the balance payable on the Leases;

(b) Interest on the balance payable under the Leases at the rate of 5% per annum until August 31, 2014, and then, commencing on September 1, 2014, payments on the Leases based on a 5-year amortization of the principal amount and interest at the rate of 5% per annum.

15.     Debtor believes that the Bank will not be prejudiced by the use of cash collateral. On the contrary, Debtor believes the lender will be benefited by continued operations and replacement liens. See valuation analysis included in **Exhibit A** hereto.

16.     Pending the final hearing, the Debtor has a need to use cash collateral through August 19, 2014 to pay operating expenses in the amounts identified in **Exhibit B**. If the Debtor is not permitted to use cash collateral on an interim basis for the purposes set forth pending a final hearing, the Debtor will suffer immediate and irreparable harm.

## ESTIMATED COLLATERAL VALUE

17.     Debtor's estimates of the value of Lenders' collateral on the petition date, on the date of the final hearing on use of cash collateral and at the end of the proposed period of use of cash collateral as set forth on **Exhibit A** . The estimates show that the valuation of the Debtor's assets will remain stable or will increase during the proposed period of use of cash collateral.

18.     Debtor's most recent balance sheets are attached hereto as **Exhibit C**.

19.     The substantial increase in the value of the Debtor's inventory is explained by its arrangement with its largest customer, Polaris Industries ("Polaris").  The Debtor has on hand substantial inventory (the "Old Inventory") which is salable only to Polaris.  Polaris has agreed to purchase that inventory only if the Debtor manufactures and delivers other inventory to Polaris over the next few months.  Unless the Debtor can so perform, the Old Inventory will have only scrap value.  The increase in value of the Debtor's inventory as it performs as promised is reflected on **Exhibit A**.

### **STIPULATION FOR USE OF CASH COLLATERAL**

20.     Prior to the Final Hearing, the Debtor and the Bank may enter into a Stipulation for Use of Cash Collateral in a form substantially the same as **Exhibit D**, which will be filed and subject to Court approval at the Final Hearing.

### **WITNESSES**

21.     Debtor reserves the right, if necessary, to offer the testimony of Giuseppe Pederzini, the President of the Debtor, and James Eckman, the Finance Manager of the Debtor, in support of the Motion.

**WHEREFORE,** Debtor respectfully requests this Court to enter an interim order followed by a final order (a) granting expedited relief; (b) authorizing use of cash collateral from the Petition Date through the date of the Final Hearing in an amount not to exceed $160,753; (c) authorizing use of cash collateral through October 31, 2014; (d) authorizing Debtors to grant the adequate protection as set forth in the Motion; and (e) granting Debtor such other legal and equitable relief to which they are entitled.

Dated:  July 30, 2014          RAVICH MEYER KIRKMAN
McGRATH NAUMAN & TANSEY,
A PROFESSIONAL ASSOCIATION


By     /e/  Michael L. Meyer (72527)

4545 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-8511

ATTORNEYS FOR DEBTOR

**VERIFICATION**

I, Giuseppe Pederzini, the President of the Debtor, declare under penalty of perjury that the facts set forth in the foregoing Notice of Hearing and Motion for Order (I) Granting Expedited Relief; (II) Authorizing Debtor's to Use Cash Collateral on an Interim and Final Basis; and (III) Granting Adequate Protection, are true and correct according to the best of my knowledge, information and belief.

Executed on: July 30, 2014

_____
Giuseppe Pederzini

# Basic assumption

**EXHIBIT A**

- Procedure costs $200,000

- Terms of payments to suppliers in the period:

  - gear and sprocket: cash on delivery

  - forging: 90 days

  - stress relieving + nitriting: 60 days

  - freight: 30 days from receipt of the material

  - rent Garfield and Kennedy: 21 days

  - other costs: 15th day of the following month

# Weekly – Monthly PL figures FY2014

| Amount in USD | 2014 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | July | | | August | | September | | | | October | November | December |
| | WK 31 | WK 32 | WK 33 | WK 34 | WK 35 | WK 36 | WK 37 | WK 38 | WK 39 | W 40-44 | W 45-48 | W 49-52 |
| **Turnover** | 46.880 | 82.040 | 105.480 | 117.200 | 175.800 | 217.663 | 188.319 | 217.663 | 367.663 | 1.338.472 | 1.385.516 | 1.119.805 |
| Material and external operation | (19.740) | (34.545) | (44.415) | (49.350) | (74.025) | (107.515) | (92.922) | (107.515) | (160.687) | (737.703) | (763.364) | (624.410) |
| Freight | (4.240) | (7.420) | (9.540) | (10.600) | (15.900) | (15.900) | (13.780) | (15.900) | (23.700) | (58.553) | (55.400) | (50.595) |
| Direct workers wages | (9.750) | (9.750) | (9.750) | (9.750) | (9.750) | (9.750) | (9.750) | (9.750) | (9.750) | (48.750) | (39.000) | (39.000) |
| Insurance on wages | (1.625) | (1.625) | (1.625) | (1.625) | (1.625) | (1.625) | (1.625) | (1.625) | (1.625) | (8.125) | (6.500) | (6.500) |
| Utilities | (1.313) | (2.297) | (2.953) | (3.282) | (4.922) | (4.922) | (4.266) | (4.922) | (9.122) | (24.612) | (23.890) | (20.318) |
| Direct consumables | (1.875) | (3.282) | (4.219) | (4.688) | (7.032) | (7.032) | (6.094) | (7.032) | (13.032) | (35.160) | (34.128) | (29.026) |
| Maintenance | (1.406) | (2.461) | (3.164) | (3.516) | (5.274) | (5.274) | (4.571) | (5.274) | (9.774) | (26.370) | (25.596) | (21.769) |
| Scrap | (480) | (839) | (1.079) | (1.199) | (1.799) | (1.799) | (1.559) | (1.799) | (3.018) | (8.554) | (7.818) | (7.158) |
| **Cost of good sold** | (40.429) | (62.219) | (76.745) | (84.010) | (120.327) | (153.817) | (134.567) | (153.817) | (230.708) | (947.826) | (955.696) | (798.776) |
| **Gross Profit** | 6.451 | 19.821 | 28.735 | 33.190 | 55.473 | 63.846 | 53.752 | 63.846 | 136.955 | 390.646 | 429.819 | 321.028 |
| Indirect employees salaries | (4.400) | (4.400) | (4.400) | (4.400) | (4.400) | (4.400) | (4.400) | (4.400) | (4.400) | (4.400) | (5.500) | (5.500) |
| Administrative employees salaries | (9.550) | (9.550) | (9.550) | (9.550) | (9.550) | (9.550) | (9.550) | (9.550) | (9.550) | (47.750) | (38.200) | (38.200) |
| Employees insurance | (1.200) | (1.200) | (1.200) | (1.200) | (1.200) | (1.200) | (1.200) | (1.200) | (1.200) | (4.800) | (5.300) | (5.300) |
| Rent (Garfield and Kennedy) | (6.146) | (6.146) | (6.146) | (6.146) | (6.146) | (6.146) | (6.146) | (6.146) | (6.146) | (30.732) | (22.127) | (20.898) |
| Other | (13.064) | (12.378) | (17.378) | (12.378) | (12.378) | (13.603) | (15.830) | (15.830) | (15.830) | (65.550) | (75.550) | (65.550) |
| **Indirect and general costs** | (34.360) | (33.674) | (38.674) | (33.674) | (33.674) | (33.670) | (37.126) | (37.126) | (37.126) | (153.232) | (146.677) | (135.448) |
| **EBITDA** | (27.909) | (13.853) | (9.939) | (484) | 21.799 | 30.176 | 16.626 | 26.720 | 99.829 | 237.414 | 283.142 | 185.581 |
| Depreciation | (20.919) | (20.919) | (20.919) | (20.919) | (20.919) | (20.919) | (20.919) | (20.919) | (20.919) | (104.593) | (83.675) | (83.675) |
| **EBIT** | (48.828) | (34.772) | (30.858) | (21.403) | 880 | 9.257 | (4.293) | 5.801 | 78.910 | 132.820 | 199.467 | 101.906 |
| Financial cost | 0 | (4.343) | (4.343) | (4.343) | (4.343) | (3.641) | (4.550) | (4.550) | (4.550) | (17.656) | (17.229) | (17.144) |
| **EBT** | (48.828) | (39.115) | (35.201) | (25.746) | (3.463) | 5.616 | (8.843) | 1.251 | 74.360 | 115.165 | 182.238 | 84.762 |

# Weekly - Monthly cash flow statement FY2014

| Amount in USD | July | August | | | | September | | | | October | November | December |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2014** | WK 31 | WK 32 | WK 33 | WK 34 | WK 35 | WK 36 | WK 37 | WK 38 | WK 39 | W 40-44 | W 45-48 | W 49-52 |
| Short term financial position at start | 23.672 | 52.975 | 37.510 | 56.693 | 75.083 | 44.476 | 77.591 | 63.887 | 112.611 | 212.603 | 710.972 | 1.363.836 |
| Collection of receivables | 42.895 | 45.005 | 46.880 | 82.040 | 105.480 | 117.200 | 175.800 | 217.663 | 188.319 | 1.254.561 | 1.361.994 | 1.252.660 |
| **Payment of direct cost** | | | | | | | | | | | | |
| Material and external operation | (4.696) | 0 | (7.140) | 0 | (41.126) | (15.136) | (69.206) | (74.789) | (28.320) | (319.597) | (337.512) | (348.780) |
| Freight | (4.240) | (7.420) | (9.540) | (10.600) | (15.900) | (15.900) | (13.780) | (15.900) | (23.700) | (58.553) | (55.400) | (50.595) |
| Direct workers wages | 0 | (19.500) | 0 | (19.500) | 0 | (19.500) | (19.221) | (19.500) | 0 | (58.500) | (39.000) | (39.000) |
| Insurance on wages | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (9.750) | (6.500) | (6.500) |
| Utilities | 0 | (3.250) | 0 | (3.250) | 0 | (3.250) | 0 | (3.250) | 0 | (23.232) | (24.612) | (23.890) |
| Direct consumables | 0 | 0 | 0 | 0 | (7.712) | 0 | (13.454) | 0 | 0 | (33.190) | (35.160) | (34.128) |
| Maintenance | 0 | 0 | (11.017) | 0 | (8.263) | 0 | (14.415) | 0 | 0 | (24.893) | (26.370) | (25.596) |
| Scrap | 0 | 0 | 0 | 0 | (2.817) | 0 | (4.916) | 0 | 0 | (8.175) | (8.554) | (7.818) |
| Sub-total | (8.936) | (30.170) | (27.697) | (33.350) | (75.818) | (53.786) | (134.992) | (113.439) | (52.020) | (535.889) | (533.108) | (536.307) |
| **Indirect and general costs** | | | | | | | | | | | | |
| Indirect employees salaries | 0 | (8.800) | 0 | (8.800) | 0 | (8.800) | 0 | (8.800) | 0 | (8.800) | (5.500) | (5.500) |
| Administrative employees salaries | 0 | (19.100) | 0 | (19.100) | 0 | (19.100) | 0 | (19.100) | 0 | (57.300) | (38.200) | (38.200) |
| Employees insurance | 0 | (2.400) | 0 | (2.400) | 0 | (2.400) | 0 | (2.400) | 0 | (6.000) | (5.300) | (5.300) |
| Rent (Garfield and Kennedy) | 0 | 0 | 0 | 0 | (25.200) | 0 | 0 | (25.200) | 0 | (50.400) | (25.200) | (25.200) |
| General (including Legal and financial consulting regarding chapter) | 0 | 0 | 0 | 0 | (13.064) | 0 | (54.512) | 0 | 0 | (61.093) | (65.550) | (75.550) |
| Sub-total | 0 | (30.300) | 0 | (30.300) | (38.264) | (30.300) | (54.512) | (55.500) | 0 | (183.593) | (139.750) | (149.750) |
| Total payment | (8.936) | (60.470) | (27.697) | (63.650) | (114.082) | (84.086) | (189.504) | (168.939) | (52.020) | (719.482) | (672.858) | (686.057) |
| Operating cash flow | 33.959 | (15.465) | 19.183 | 18.390 | (8.602) | 33.114 | (13.704) | 48.724 | 136.299 | 535.079 | 689.136 | 566.603 |
| Payment to BOTW (principal only) | 0 | 0 | 0 | 0 | (17.372) | 0 | 0 | 0 | (17.291) | (17.656) | (17.229) | (17.144) |
| Payment to other lease (principal only) | (4.656) | 0 | 0 | 0 | (4.633) | 0 | 0 | 0 | (14.242) | (14.260) | (14.273) | (14.294) |
| Net cash flow | 33.959 | (15.465) | 19.183 | 18.390 | (25.974) | 33.114 | (13.704) | 48.724 | 119.008 | 517.423 | 671.907 | 549.459 |
| Short term financial position at the end | 52.975 | 37.510 | 56.693 | 75.083 | 44.476 | 77.591 | 63.887 | 112.611 | 212.603 | 710.972 | 1.363.836 | 1.894.210 |

# Collateral value FY2014

| | Start | July | August | | | | September | | | | October | November | December |
| | | WK 31 | WK 32 | WK 33 | WK 34 | WK 35 | WK 36 | WK 37 | WK 38 | WK 39 | W 40-44 | W 45-48 | W 49-52 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Stock | 51,213 | 54,333 | 56,868 | 59,013 | 60,963 | 58,038 | 58,607 | 59,624 | 60,193 | 60,763 | 52,674 | 42,149 | 38,236 |
| Receivables | 87,900 | 91,885 | 128,920 | 187,520 | 222,680 | 293,000 | 393,463 | 405,982 | 405,982 | 585,325 | 669,236 | 692,758 | 559,903 |
| Cash | 23,672 | 52,975 | 37,510 | 56,693 | 75,083 | 44,476 | 77,591 | 63,887 | 112,611 | 212,603 | 710,972 | 1,363,836 | 1,894,210 |
| Total collateral value | 162,785 | 199,193 | 223,298 | 303,226 | 358,726 | 395,514 | 529,661 | 529,493 | 578,786 | 858,691 | 1,432,882 | 2,098,743 | 2,492,349 |

# EXHIBIT B

**PAYMENT WEEK 31-34**

|  | Forecast payment W31-W34 |
|---|---|
| Material and External operation | 11,836 |
| Freight | 31,800 |
| Direct workers wages | 39,000 |
| Insurance on wages | 6,500 |
| Direct consumables | 11,017 |
| Indirect emplyees salaries | 17,600 |
| Administrative employees salaries | 38,200 |
| Employees insurance | 4,800 |
| **Total** | **160,753** |

# EXHIBIT C

**MAPE USA, INC.**
**Balance Sheet**
**As of June 30, 2014**

|  | June |
|---|---:|
| **ASSETS** | |
| | |
| Current Assets | |
| Cash -Bank Wells Fargo | 431 |
| Cash - Bank - Bank of the West | 413 |
| Cash - Bank - UniCredit Group | (100) |
| Cash - Bank - BOW EURO Call | 4,821 |
| North American Banking Co | 3,567 |
| **Total Cash** | **9,132** |
| | |
| Accounts Receivable-Trade | 211,268 |
| Reserve for Bad Debts and Adj | (115,353) |
| **Total Accounts Receivable** | **95,915** |
| | |
| Inventory | 1,672,277 |
| Prepaid Insurance | 94,147 |
| Prepaid Expenses | 22,566 |
| Total Current Assets | **1,894,037** |
| | |
| Property & Equipment | |
| Computer | 109,533 |
| FA-Computer | 1,568 |
| Equipment | 12,128,539 |
| Equipment - 1501 Kennedy | 4,891,550 |
| Furniture & Fixtur | 102,268 |
| Furn & Fixt - 1501 Kennedy | 13,272 |
| Leasehold Imprvmt | 37,451 |
| Leasehold Imprvmt-1501 Kennedy | 110,699 |
| Software | 75,707 |
| Tools | 1,440,070 |
| FA Tools - 1501 Kennedy | 284,559 |
| Accumulated Depreciation | (8,346,112) |
| **Total Property & Equipment** | **10,849,104** |
| | |
| Other Assets | |
| Security Deposits | 81,752 |
| **Total Other Assets** | **81,752** |
| | |
| **Total Assets** | **12,824,893** |

**MAPE USA, INC.**
**Balance Sheet**
**As of June 30, 2014**

**LIABILITIES**

Current Liabilities

| | |
|---|---:|
| Trade Payables | 1,980,399 |
| Payable - PBRE | 39,171 |
| A/P -Affiliate | 8,336,021 |
| **Total Accounts Payable** | **10,355,591** |

Other Current Liabilities

| | |
|---|---:|
| Curr Liab-RLOC BOW | 2,750,000 |
| Accrued Expenses | 396,000 |
| Accrued Payroll Liabilities | 341 |
| 401K Withholding | 142 |
| Accrued Wages & Payroll Tx | 23,877 |
| Accrued Income Tax | 3,868 |
| Accrued Vacation | 2,487 |
| AFLAC Withholding | 1,909 |
| Accrued Interest | 141,541 |
| Accrued Expenses | **570,165** |
| **Total Other Current Liabili** | **3,320,165** |

Long Term Liabilities

| | |
|---|---:|
| Equipment Lease Payable | 1,757,426 |
| BOTW lease | 762,183 |
| TCF | 241,037 |
| LTL-Note Payable BOW | 348,214 |
| LTL-Note Pay. City Cambridge | 52,616 |
| LTL-Note Pay, Banterra Bank | 154,320 |
| LTL-Note Pay, GE Capital | 432,177 |
| **Total Long Term Liabilities** | **3,747,973** |

| | |
|---|---:|
| **Total Liabilities** | **17,423,729** |

**Equity**

| | |
|---|---:|
| Common Stock | 30,000 |
| Additional Paid in Capital | 3,918,721 |
| Retained Earnings | (7,632,608) |
| Net Income | (914,949) |
| **Total Equity** | **(4,598,836)** |

| | |
|---|---:|
| **Total Liabilities & Equity** | **12,824,893** |

## EXHIBIT D

### UNITED STATES BANKRUPTCY COURT.
### DISTRICT OF MINNESOTA

---

In re:

Mape USA, Inc.                              ,                    Case No. BKY 14-43123

               Debtor.                                   Chapter 11 Case

---

### STIPULATION AND AGREED
### ORDER AUTHORIZING USE OF CASH COLLATERAL

---

Mape USA, Inc. (the "Debtor" or "MAPE") and prepetition secured lender Bank of the West (the "Secured Lender"), by and through their respective counsel, hereby stipulate to the Debtor's use of cash collateral under an Agreed Order Authorizing Use of Cash Collateral.

### BACKGROUND

A.    On July 30, 2014 (the "Petition Date"), the Debtor filed a voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtor is authorized as debtor-in-possession to continue the operation and management of its business under Sections §§ 1107 and 1108 of the Bankruptcy Code.

### PREPETITION SECURED DEBT

Line of Credit and Term Note

B.      Bank of the West and MAPE entered into a Credit Agreement dated April 10, 2008 (together with all amendments the "Credit Agreement") pursuant to which Bank of the West agreed to make certain loans to MAPE.

C.      In connection with the Credit Agreement, MAPE executed a Line of Credit Note dated August 15, 2012 in the original principal amount of up to $2,750,000.00 ("Line of Credit").

D.      In connection with the Credit Agreement, MAPE also executed a Term Note dated August 15, 2012 in the original principal amount of $500,000.00 ("Term Note").

E.      In connection with the Line of Credit and Term Note, MAPE also executed a Loan and Security Agreement dated August 15, 2012 ("Security Agreement"), whereby MAPE granted Bank of the West a security interest in, a lien on and pledge and assignment of all of MAPE's present and future right, title and interest in and to any and all of the personal property of MAPE whether such property is now existing or hereafter created ("Collateral"). Bank of the West perfected its first priority security interest in the Collateral by filing financing statements covering the Collateral with the Minnesota Secretary of State.

Master Equipment Financing Agreement

F.      Bank of the West and MAPE entered into a Master Equipment Financing Agreement dated March 28, 2012 ("Financing Agreement") pursuant to which Bank of the West agreed to provide MAPE financing for the acquisition of certain machinery, equipment and other property listed on the schedules attached to the Financing

Agreement ("Equipment"). Amounts are due and owing Bank of the West for financing provided to MAPE under Financing Agreement, Schedule 1 as well as Financing Agreement, Schedule 2.

G.      Pursuant to the Financing Agreement, MAPE granted Bank of the West a security interest in the Equipment, in order to secure performance under the Financing Agreement and any other agreement between the parties.  Bank of the West perfected its first priority security interest in the Equipment by filing financing statements covering the Equipment with the Minnesota Secretary of State

H.      In connection with the Finance Agreement, Bank of the West and MAPE entered into a Master Progress Payment Agreement dated June 28, 2012, in which Bank of the West advanced funds for progress payments respecting amounts owed vendors of certain of the Equipment prior to MAPE's acceptance of that Equipment.

I.      Pursuant to the Financing Agreement, MAPE granted Bank of the West a security interest in the Equipment, in order to secure performance under the Master Progress Payment Agreement.  The Finance Agreement, Master Progress Payment Agreement and related documents are hereinafter referred to as the "Equipment Finance Documents."

J.      As of the Petition Date, the Debtor owed the Secured Lender approximately $4,002,645.78 of outstanding principal under the Line of Credit Note, the Term Note, the Financing Agreement, Schedule 1, Financing Agreement, Schedule 2 and the Master Progress Payment Agreement between the Debtor and Secured Lender (the "Prepetition Indebtedness"), plus additional interest accruing at the rate set forth

3

under the documents as well as costs of collection and attorneys fees in an amount as yet undetermined (the "Indebtedness").

K.      The Prepetition Indebtedness has been, is and continues to be secured, without limitation, by all, or substantially all, of the Debtor's assets, whether now owned or hereafter acquired, including, but not limited to, all Accounts, Equipment, General Intangibles, Inventory, Investment Property and other personal property of the Debtor and proceeds of any of the foregoing (collectively, the "Collateral") described with more particularity in one or more Security Agreements and Equipment Finance Documents.

L.      The above notes, mortgages, financing agreements, loan agreements, Equipment Finance Documents, security agreements, and any and all other documents and instruments evidencing, securing or related to the above loans and financing agreements, including any and all renewals, extensions, restatements, replacements and amendments of any of the foregoing, are hereinafter referred to collectively as the "Loan Documents;"

M.      All of the Debtor's money and the revenues, receivables, proceeds, products, and profits of the Collateral may constitute cash collateral within the meaning of § 363(a) of the Bankruptcy Code (the "Cash Collateral").

N.      The Secured Lender possesses perfected liens against the Collateral and Cash Collateral described above.  Pursuant to the Debtor's obligations under §§ 363(c) and (e) of the Bankruptcy Code, the Debtor has requested that the Secured Lender consent to its use of the Secured Lender's collateral, including Cash Collateral, as

defined in § 363(a) of the Bankruptcy Code, as contemplated by § 363(c)(2)(A) of the Bankruptcy Code.

O.     Bank of the West has a secured, priority interest in the Debtor's Cash Collateral. The parties agree that, as a fully secured creditor, and to the extent permitted under § 506 of the Bankruptcy Code, the Secured Lender is entitled to the accrual of interest on its claim at the rate set forth in Loan Documents, together with reimbursement for its reasonable costs of collection and attorney's fees. Subsequent to the Petition Date, interest on the Indebtedness has accrued and will continue to accrue pursuant to the terms of the Loan Documents.

P.     The Debtor has an immediate need to use avoid immediate and irreparable harm to the estate until entry of a final order.  After the interim period and through the earlier of (i) confirmation of a plan of reorganization, and (ii) December 31, 2014, the Debtor must have access to cash collateral to pay ordinary operating expenses of the business, and administrative expense obligations of the Chapter 11 case.  The debtor will generate cash from continuing operations and it projects that such cash will be sufficient to fund its postpetition operations while maintaining a level of collateral to provide adequate protection to the Secured Lender.

Q.     The Secured Lender has demanded payment of adequate protection to protect its interests in all of the Collateral securing its claims, including but not limited to its continuing claim for interest on the Prepetition Indebtedness.

R.      The Debtor has requested of the Secured Lender its permission to use its Cash Collateral, and the Secured Lender has indicated its willingness to grant such permission, but only upon the terms and conditions set forth in this Stipulation.

S.      The Debtor and Bank of the West request that the Court grant the relief requested in the Agreed Order and such other relief as is just and proper.

AGREEMENT

NOW, THEREFORE, in consideration of the terms, conditions and covenants in this Stipulation, the parties agree as follows:

1.      Recitals. The Recitals set forth in this Stipulation are adopted by the parties as true and correct statements of fact.

2.      Acknowledgement of secured claim. The Debtor acknowledges that the above-described Prepetition Indebtedness is absolutely and unconditionally due and payable to the Secured Lender without offset, defense or counterclaim. The Debtor acknowledges that it has no claims or causes of action against the Secured Lender of any type or character and waives and releases any right to object to the allowance of, and any defense with respect to, the Prepetition Indebtedness. The Debtor further acknowledges that the Prepetition Indebtedness is secured by a properly perfected lien in all of the Collateral. The Debtor further acknowledges that the Secured Lender's lien in all the Collateral shall continue to have the same priority, dignity and effect postpetition as it had immediately prior to the petition date. Neither the Indebtedness nor the lien in the prepetition Collateral securing the same are subject to avoidance or disallowance under the Code. However, the foregoing

acknowledgments shall not be binding on any Trustee subsequently appointed in this case.

3.      <u>Consent to use of cash collateral.</u> The Secured Lender and the Debtor stipulate and agree to the use of cash collateral, pursuant to the Budget attached as Exhibit A to the proposed order, on an interim basis through _____, 2014 and on a final basis through the earlier of (i) confirmation of a plan of reorganization and (ii) _____, 2014.  Attached hereto as **Exhibit 1** is an Agreed Order for Interim Use of Cash Collateral and the Budget.  Attached hereto as **Exhibit 2** is an Agreed Order for Final use of Cash Collateral on a final basis through the earlier of (1) confirmation of a plan of reorganization and (ii) _____, 2014.

The Budget is a projection prepared by the Debtor to represent the Debtor's anticipated expenses together with projections of cash balances during the term of the Agreement. The Debtor represents that the Budget was prepared in good faith and to the best of its knowledge reflects the level of revenues and operating expenses projected by the Debtor during the term of the Agreement. The Debtor hereby agrees that any and all cash collateral used by the Debtor shall be used solely for the payment when due of all filing fees and required U.S. Trustee fees and the operating expenses incurred by the Debtor for the purposes and in the amounts set forth in the Budget.  The Debtor may use cash to pay ordinary and necessary business expenses and administrative expenses for the items, and in such use that will not vary materially from that provided for in the Budget, except for variations attributable to expenditures

specifically authorized by the United States Bankruptcy Court.  A material variation in the Budget shall be more than fifteen (15) percent.

4.      Continuity of provisions of existing loan documentation pertaining to Collateral.  Except to the extent modified by this Stipulation, all of the terms, conditions and undertakings of the notes, loan agreements, security agreements, and related loan documents pertaining to the Collateral remain in full force and effect and are adopted in this Stipulation as if fully set forth herein, insofar as they pertain in any manner to grants, duties or undertakings in any manner relating to the Collateral.

5.      Adequate protection.  As and for adequate protection within the meaning of §361 of the Bankruptcy Code:

a.      For purposes of adequate protection, and to the extent of the Debtor's use of prepetition Cash Collateral in which the Secured Lender has a security interest, the Debtor grants the Secured Lender replacement liens, pursuant to §§ 361, 363 and 552 of the Bankruptcy Code, in the Debtor's postpetition assets, whether now owned or hereafter acquired or arising, of the same priority, dignity and effect as the prepetition liens of the Secured Lender, if any, on the prepetition property of the Debtor.  The replacement liens granted by the Debtor and approved by the Court shall be deemed valid, perfected, enforceable and effective as of the Petition Date without further action on the part of the Debtor or the Secured Lender and without the necessity for the execution or recordation of any financing statement, security agreement or other instrument; provided, however, that the Debtor shall execute and deliver such

documents and instruments as the Secured Lender may request to evidence, conform, validate or perfect the security interests granted by the Debtor and approved by the Court. The replacement liens set forth herein shall not affect or otherwise be secured by any subsequent turnover, preference, fraudulent conveyance actions, or other actions commenced or initiated under Chapter 5 of the Code.

b.      Commencing with entry of the order approving this Stipulation and authorizing the Debtor's use of Cash Collateral and continuing thereafter for six (6) months, the debtor will remit a monthly payment to the Secured Lender in the amount of interest due to Secured Lender each month calculated at the rate of five percent (5%) per annum on the Prepetition Indebtedness, except for the Finance Agreement, Schedule 1 and Finance Agreement, Schedule 2, where beginning with the payment due in September 2014, the Debtor will make full payments of principal and interest each month to the Secured Lender.

c.      The amounts paid to Secured Lender hereunder shall be applied by Secured Lender first to the payment of interest at the rate set forth in the Notes, but only to the extent, if any, allowable under §506(b) of the Bankruptcy Code, and the balance shall be applied to the reduction of principal.

6.      Undertakings by the Debtor relative to perfection and surcharges. The Debtor shall execute such documents as the Secured Lender reasonably requests in order to memorialize and perfect the Secured Lender 's interest in the Collateral described or granted in this Stipulation; provided however that any such interest

granted to the Secured Lender under this agreement shall be valid and effective without the necessity of recording any further documentation and no action shall be required to be taken by the Secured Lender to evidence or perfect said liens and security interests, although the Secured Lender at its option may elect to do so. The Debtor shall not engage in any proceedings to impose upon the Secured Lender or upon the Collateral (as defined hereinafter) the surcharge provisions of §506(c) of the Bankruptcy Code or the enhancement of collateral provisions of §552 of the Bankruptcy Code.

7.      <u>Administrative Expense Claim.</u> In addition to the security interest granted to Secured Lender pursuant to Paragraph 6, and to the extent that the security interest granted to Secured Lender pursuant to Paragraph 6 proves inadequate to fully protect Secured Lender, giving rise to a claim allowable under §507(a)(1) of the Bankruptcy Code by Secured Lender for the use, replacement or diminution of the Collateral, or for any diminution in the allowed secured claim of Secured Lender as it existed upon the Petition Date, the Debtor acknowledges and agrees that Secured Lender shall have, and shall be entitled to assert, any and all rights as in to the extent available to Secured Lender under §507(b) of the Bankruptcy Code.

8.      <u>Additional Covenants.</u> In addition to the other agreements, covenants and undertakings of the Debtor herein, Debtor agrees that it will:

a.      Maintain the existing cash management practices with respect to its accounts in effect prior to the Petition Date with respect to the Loans, security agreements and related agreements between the Debtor and Lender;

b.      Maintain insurance on all of its assets, collateral, real estate, and buildings, with Secured Lender named as loss payee, and will provide proof of insurance reasonably acceptable to Secured Lender, including declaration pages for general liability, property damage, workers' compensation, and all other coverage as may be required by Secured Lender.

c.      Keep complete and accurate books and accounts; provide to Secured Lender reasonable access to its books, records and accounts; and cause its accountants or bookkeepers to comply with any reasonable request by Lender or its agents concerning preparation of appropriate financial information and reports.

d.      Timely file and provide Secured Lender copies of all reports required to be filed by the Debtor, including United States Trustee monthly operating reports.

e.      Provide access to Secured Lender's officers, employees and agents at any time during normal operating hours, in a reasonable manner, and upon reasonable notice to the Debtor and its attorneys, to make photocopies of its books and records and to make physical inspection and appraise any part of its Collateral.

f.      Upon reasonable request, the Debtor shall provide to Secured Lender all financial data in its possession or otherwise available to it, including but not limited to computer databases and the results of computer program runs, which in any manner pertain to its financial affairs.

g.     Provide to Secured Lender in written form satisfactory to Secured Lender accurate certified reports (prepared by an authorized officer of the corporation) as follows: Updated accounts receivable and aging report as of the last day each month; and updated balance sheet, profit and loss statement, cash flow summary, and general ledger reflecting the Debtor's payment of monthly expenses from all debtor in possession accounts maintained by the Debtor as of the last day of each month; and a statement of eligible inventory to include work in progress and finished goods for delivery under current work orders.

h.     Advise Secured Lender in writing of any material changes in its financial circumstances within five (5) calendar days of its knowledge as to such change.

i.     Timely file all tax returns with State and Federal governments;

j.     Provide any documentation reasonably required by Secured Lender to verify assets, liabilities, and overall operations of the Debtor during the term of this Agreement.

k.     Operate in material conformity with the Budget.

9.     <u>Stipulation subject to Court Order.</u> This Stipulation is subject to the entry of an Order approving the Stipulation, and the parties agree that such an Order may be entered.

10.     <u>GAP provisions upon any extension of term of Stipulation.</u> In the event that the Debtor and Secured Lender enter into an agreement to extend the term of the

Stipulation, one or both of them shall apply to the Court, upon notice to all parties in interest, for approval of such extension agreement. In the event of such agreement and notice, and until or unless an objection is filed by a party in interest, or the Court (regardless of whether an objection is filed) enters an Order on the motion, the Debtor shall be deemed authorized to continue to use cash collateral (but only in accordance with the terms of the extended Stipulation), and the above grant of a replacement lien to Secured Lender shall continue in full force and effect to the same extent as herein provided. (However, nothing in this paragraph should be construed as an undertaking to extend this Stipulation, nor as an indication that, if this Stipulation is so extended, that any such extension would necessarily involve any extensions regarding the granting and repayment of postpetition financing.)

11.    Notices. All notices require to be sent by the terms of this Stipulation shall be sent to the persons at the addresses listed below, or otherwise designed in writing from time to time.

If to Debtor, it should be sent to:

Mape USA, Inc
315 South Garfield Street
Cambridge, MN 55008
Attn: Giuseppe Pederzini, President

and

Michael L. Meyer, Esq.
Ravich Meyer Kirkman McGrath Nauman & Tansey PA
4545 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Facsimile: 612-332-8302

If to Secured Lender, it should be sent to:

Robin S. Oberg, Vice President
Bank of the West
13220 California Street
Omaha, NE 68154
Facsimile:  (402) 918-8331

and

Jeffrey D. Smith, Esq.
Lindquist & Vennum LLP
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Facsimile: (612) 371-3207

12.    <u>Complete agreement.</u> This Stipulation, together with the Loan Documents relating to the Existing Indebtedness, as modified herein, sets forth the complete agreement of the parties relative to its subject matter, and may not be modified, waived, or changed, except by a writing signed by the parties to be bound thereby.

13.    <u>Default.</u> An Event of Default shall occur here rendered immediately upon the occurrence of any of the following:

a.    Failure of Debtor to make any payment required under this Agreement when due;

b.    Without limiting the generality of the foregoing, any failure of Debtor to make the reports required herein, or to pay currently any amounts due the United States Trustee and any taxing authorities;

c. Entry of an Order of the Court altering or vacating the Order approving this Stipulation, or lifting the automatic stay as to any other creditor, or providing for conversion or dismissal of the case, unless Secured Lender shall consent to any such Order;

d. Default by the Debtor in the performance or observation of any agreement, covenant, condition, provision and term contained in this Stipulation (other than the default described in subparagraph (a) of this Paragraph 13), including default by the Debtor in the performance or observation of any material term of the Loan Documents, as incorporated by reference herein, but excluding any default of the Debtor's obligations upon maturity of the Indebtedness; or

e. Any representation or warranty made by the Debtor herein or in any statement, report, notice or writing furnished by or on behalf of the Debtor to Secured Lender shall be untrue or misleading in any material respect on the date as of which the facts set forth are stated.

f. The Debtor reports a net operating loss (exclusive of expenses associated with the bankruptcy proceeding, including, but limited to attorney fees and U.S. Trustee quarterly payments) for any 60 day continuous period of time contained in those reports that the Debtor will be providing to the United States and Secured Lender on a monthly basis and as required by the previous provisions of this Stipulation.

g.     The Debtor fails to maintain adequate insurance coverage for Secured Lender's Collateral.

h.     The Debtor fails to provide Secured Lender with the required financial documentation set forth herein on or before each due date, including, but not limited to, the monthly reports that the Debtor will be required to file with the United States Trustee's Office, and monthly balance sheets, profit and loss statements, cash flow summaries, account ledger reports, accounts receivable reports, accounts payable reports, and contract status reports

i.     The Debtor fails to provide any financial information reasonably requested by Secured Lender during the term of this Stipulation or failure to provide Secured Lender with copies of filed state and federal tax returns on, or within, 10 days after they are filed with the appropriate governmental entities.

j.     The Debtor makes any payment outside of the ordinary course of its business, or exceeds use of cash collateral for any one month period of time in excess of 15% of the Debtor's monthly budget and projections as set forth on Exhibit A attached hereto, without first obtaining the prior written request of Secured Lender and confirmed by Court order.

k.     The Debtor's bankruptcy case is dismissed or converted.

l.     A Chapter 11 trustee is appointed.

m.     Any relief that may be granted in the Debtor's bankruptcy case which may cause irreparable harm to the rights of Secured Lender and its security interest in the Collateral.

n.    Any party in interest obtains an order granting it relief from the automatic stay to pursue rights and remedies against any asset in which Secured Lender has a security interest.

o.    Any party other than the Debtor files a plan of reorganization.

p.    If any such event of default is not cured on or within five days of the Debtor and its counsel receiving written notice of such default, Secured Lender shall be entitled to request expedited relief from the automatic stay to pursue its rights and remedies as a perfected secured creditor.

14.    <u>Remedies.</u> Upon the occurrence of then Event of Default hereunder:

a.    The consent of Secured Lender to the Debtor's use of cash collateral shall immediately terminate, the Debtor shall have no right to the use of cash collateral, and the Debtor shall segregate all cash collateral, wherever located and however maintained, for the benefit of Secured Lender;

b.    The Debtor shall have no right or authority to use, sell, lease or otherwise dispose of any property securing the claims of Secured Lender; and

c.    Secured Lender may, upon motion to the court and upon notice to parties in interest, seek relief from the automatic stay under the Code to foreclose its liens and security interests and for such other relief Secured Lender may request. The Debtor agrees that the occurrence of an Event of Default shall constitute sufficient grounds for relief in the automatic stay under Section 362 of the Code; provided, however, that this provision does not limit

the Debtor's right to seek affirmative relief from the Court upon separate notice and motion to the Court.

15.    <u>Binding effect</u>.   This agreement shall be binding upon the Debtor, its successors and assigns, but not upon any Trustee subsequently appointed in this case.

16.    <u>No Waivers</u>.   Except as specifically herein set forth, neither the Debtor nor Secured Lender waives any rights to which it is entitled under the terms of the existing loan documentation.   No failure or delay by Secured Lender in exercising any right, power or remedy hereunder or any other related loan documentation shall be a waiver thereof, nor shall any single or partial exercise of such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

17.    <u>Additional relief</u>.   Nothing contained herein shall be deemed to preclude the party from seeking any and all additional remedies provided under the Code.

IN WITNESS WHEREOF, the parties and their respective counsel have executed this agreement the day and the year first above written.

DATED:  June __, 2014.

**LINDQUIST & VENNUM LLP**

By:  /e/_____

       William P. Wassweiler (     )
       Jeffrey D. Smith (# 0387035)
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:  (612) 371-3211
Facsimile:   (612) 371-3207
E-mail:  wwassweiler@lindquist.com
E-mail:  jsmith@lindquist.com

Attorneys for Bank of the West

**RAVICH MEYER KIRKMAN McGRATH
NAUMAN & TANSEY PA**

By:  /e/_____

       Michael L. Meyer (#_____)
4545 IDS Center
 80 South Eighth Street
Minneapolis, MN 55402
ph:  (612) 317-4745
fax: (612) _____
Email: mlmeyer@ravichmemer.com

Counsel for Mape USA, Inc.

UNITED STATES BANKRUPTCY COURT.
DISTRICT OF MINNESOTA

---

In re:

Mape USA, Inc.                                    Case No. BKY 14-_____

            Debtor.                                    Chapter 11 Case

---

**AGREED ORDER AUTHORIZING USE OF CASH COLLATERAL**

---

On August ___, 2014, Mape USA, Inc. (the "Debtor" or "MAPE") filed a *Motion for Entry of Final Order Authorizing Use of Cash Collateral* pursuant to 11 U.S.C. §§ 362(c)(2) and (e) and Fed. R. Bankr. P. 4001 (the "Motion"). The Debtor and its pre-petition lender Bank of the West ("Secured Lender") submit this Agreed Order Authorizing Use of Cash Collateral. The Court makes the following findings of fact and conclusions of law:

      A.      The Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code on July 30, 2014 (the "Petition Date").

<u>Line of Credit and Term Note</u>

      B.      Prior to the Petition Date, Bank of the West and MAPE entered into a Credit Agreement dated April 10, 2008 (together with all amendments the "Credit Agreement") pursuant to which Secured Lender agreed to make certain loans to MAPE.

C.      In connection with the Credit Agreement, MAPE executed a Line of Credit Note dated August 15, 2012 in the original principal amount of up to $2,750,000.00 ("Line of Credit").

D.      In connection with the Credit Agreement, MAPE also executed a Term Note dated August 15, 2012 in the original principal amount of $500,000.00 ("Term Note").

E.      In connection with the Line of Credit and Term Note, MAPE also executed a Loan and Security Agreement dated August 15, 2012 ("Security Agreement"), whereby MAPE granted Bank of the West a security interest in, a lien on and pledge and assignment of all of MAPE's present and future right, title and interest in and to any and all of the personal property of MAPE whether such property is now existing or hereafter created ("Collateral"). Bank of the West perfected its first priority security interest in the Collateral by filing financing statements covering the Collateral with the Minnesota Secretary of State.

<u>Master Equipment Financing Agreement</u>

F.      Bank of the West and MAPE also entered into a Master Equipment Financing Agreement dated March 28, 2012 ("Financing Agreement") pursuant to which Bank of the West provided MAPE financing for the acquisition of certain machinery, equipment and other property listed on the schedules attached to the Financing Agreement ("Equipment").

G.      Pursuant to the Financing Agreement, MAPE granted Bank of the West a security interest in the Equipment, in order to secure performance under the Financing

Agreement and any other agreement between the parties.  Bank of the West perfected

its first priority security interest in the Equipment by filing financing statements

covering the Equipment with the Minnesota Secretary of State

H.      In connection with the Finance Agreement, Bank of the West and MAPE

entered into a Master Progress Payment Agreement dated June 28, 2012, under which

Bank of the West advanced funds for progress payments respecting amounts owed

vendors of certain of the Equipment prior to MAPE's acceptance of that Equipment.

I.      Pursuant to the Financing Agreement, MAPE granted Bank of the West a

security interest in the Equipment, in order to secure performance under the Master

Progress Payment Agreement.   The Finance Agreement, Master Progress Payment

Agreement and related documents are hereinafter referred to as the "Equipment

Finance Documents."

J.      As of the Petition Date, there was approximately $_____ of

outstanding principal due under the Line of Credit Note, the Term Note, the Financing

Agreement and Equipment Finance Documents and other agreements between the

Debtor and Secured Lender (the "Prepetition Indebtedness"), plus additional interest

accruing at the rate set forth under the documents as well as costs of collection and

attorneys fees in an amount as yet undetermined (the "Indebtedness").

K.      The Prepetition Indebtedness has been, is and continues to be secured,

without limitation, by all, or substantially all, of the Debtor's assets, whether now

owned or hereafter acquired, including, but not limited to, all Accounts, Equipment,

General Intangibles, Inventory, Investment Property and other personal property of the

Debtor and proceeds of any of the foregoing (collectively, the "Collateral") described with more particularity in one or more Security Agreements and Equipment Finance Documents.

L.      The above notes, mortgages, financing agreements, loan agreements, Equipment Finance Documents, security agreements, and any and all other documents and instruments evidencing, securing or related to the above loans and financing agreements, including any and all renewals, extensions, restatements, replacements and amendments of any of the foregoing, are hereinafter referred to collectively as the "Loan Documents;"

B.      Prior to the Petition Date, the Debtor entered into multiple promissory notes, lease agreements, Loan Agreements with Bank of the West ("Secured Lender") entered into under which approximately $_____ of outstanding principal is due under the Loan Documents as of the Petition Date (the "Prepetition Indebtedness"), plus additional interest accruing at the rate set forth under the Loan Documents as well as costs of collection and attorneys fees in an amount as yet undetermined (the "Indebtedness").

C.      The Prepetition Indebtedness has been, is and continues to be secured, without limitation, by all, or substantially all, of the Debtor's assets, whether now owned or hereafter acquired, including, but not limited to, all Accounts, Equipment, General Intangibles, Inventory, Investment Property and other personal property of the Debtor and proceeds of any of the foregoing (collectively, the "Collateral") described

with more particularity in one or more Security Agreements, Lease Agreements and other documents

D.     Secured Lender has indicated its willingness to allow the Debtor to use the Collateral (defined below) and Cash Collateral (defined below) in which the Lender claims a perfected security interest, but only on the specific terms and conditions set forth in this Order.

E.     As of the Petition Date, there was approximately $_____ outstanding principal amount due to the Secured Lender under the Loan Documents.

F.     All of the Debtor's money and the revenues, receivables, proceeds, products, and profits of the Collateral may constitute cash collateral within the meaning of Bankruptcy Code § 363(a) (the "Cash Collateral").

G.     Notice and an opportunity for hearing have been given to the extent required for entry of this order.

H.     Without the use of Cash Collateral subject to the liens and interests of the Secured Lender, the Debtor will be unable to continue operations and the relief requested by the Debtor in the Motion is necessary to avoid immediate and irreparable harm.  Therefore,

IT IS ORDERED:

1.     The debtor is authorized to use cash collateral that may be subject to the liens of Bank of the West (the "Secured Lender") and consistent with the projections attached as Exhibit A to this Order on an interim basis through _____, 2014.

2.       Subject to the provisions of this Order, the Debtor is authorized to receive, collect and make use of the Cash Collateral, to the extent provided herein and in accordance with the Budget, subject to the Lender's continuing priority liens and security interests, to (i) permit the orderly continuation of the operation of its business and the management and preservation of the Debtor's assets and properties, (ii) maintain business relationships with vendors, suppliers and customers, (iii) satisfy other working capital and operational needs, and (iv) maintain the value of the Debtor's estate; provided however, no amounts may be expended for prepetition debt without a prior order of the Court.

3.       Debtor may vary from the terms of the budget without seeking prior written consent from Lender by the amount of fifteen percent (15%) per month.  Debtor may, from time to time, deliver to Lender a proposed Supplemental Budget covering the proposed use of Lender's Collateral in addition to and/or different from the expenditures set forth in the Budget.  Lender shall deliver in writing to Debtor any objection to the Supplemental Budget within seven (7) business days of receipt of the Supplemental Budget.  If no such objection is timely made, then Debtor shall be authorized to use Cash Collateral in the amounts and for the purposes set forth in the Supplemental Budget.  In the event that an objection is made, Debtor shall not be entitled to utilize the Cash Collateral in regard to any budgeted supplemental expense in excess of or in addition to the Budget until Lender withdraws the objection in writing or upon the entry of an order by this Court authorizing such expenditure.

4.    Additionally, Debtor shall be permitted to use Cash Collateral to pay (i) the statutory fees of the Clerk of the Court and the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (ii) the unpaid reasonable fees and expenses actually incurred on or after the Petition Date and allowed and approved by order of the Bankruptcy Court under §§ 330 and 331 of the Bankruptcy Code to professional persons retained under §§ 327 or 1103 pursuant to an Order of the Court by the Debtor, but only so long as the Debtor retains the rights under this Order to use Cash Collateral.

5.    The Debtor shall not directly or indirectly expend or use any Cash Collateral except as provided herein.

6.    Debtor's right to use the Collateral and Cash Collateral hereunder shall terminate automatically and without action by any person on the earlier of **(i) _____, 2014** (the "Termination Date"), which date may be extended by mutual agreement of the Lender and Debtor without the need to obtain further an order of the Bankruptcy Court; or **(ii)** the occurrence of one of the following events:

a.    Failure to comply with this Order, which failure to comply shall remain uncured for five (5) days after written notice from Lender to Debtor with a copy to the United States Trustee, including the failure to pay adequate protection in accordance with this Order;

b.    Entry of an order under Bankruptcy Code § 1112, including conversion of this case to a case under Chapter 7 or dismissal of this case;

c.    Entry of an order under Bankruptcy Code § 1104, appointing a Chapter 11 Trustee in this case;

d.      Entry of an order under Bankruptcy Code § 362(d) in favor of any person other than Lender and materially affecting any of the property constituting part or all of the Collateral or materially affecting Lender's security interests therein;

e.      Failure of Debtor to maintain insurance on the Collateral as required by the Loan Documents;

f.      Closing of a sale the Collateral under Bankruptcy Code § 363 with the amounts owing under the Loans not being paid in full at such closing;

g.      Failure to comply with the Budget as permitted by this Agreement;

h.      Failure to stay current on any and all taxes which create a lien on Lender's Collateral or Cash Collateral;

i.      Failure to provide Lender with timely and accurate monthly financial reports, including the Trustee Reports and other financial information reasonably requested by Lender; and

j.      Sale, assignment, or dissipation of Lender's Collateral outside the ordinary course of Debtors' business and without Bankruptcy Court authority.

k.      Upon the occurrence of a default as set forth herein, Lender shall provide notice of such default to Debtor with a copy to the Office of the United States Trustee and if a Committee has been appointed, then to the Committee and its legal counsel.  Debtor and other notice parties shall have a period of five business days from mailing of the notice of such default to cure or request a hearing before the Court to determine whether a default has indeed occurred.  If

a request for a hearing or cure do not occur within the stated five business days,

Debtor's right under this Order to use the Cash Collateral shall terminate (unless

Debtor has otherwise obtained an Order authorizing use of Cash Collateral). Use

of Cash Collateral shall immediately cease, including no further payment of fees

and expenses already approved pursuant to 11 U.S.C. § 330 and 311.

l.       The Debtor shall, in the first instance, deposit all Cash Collateral

upon receipt into its debtor-in-possession account. The funds in the debtor-in-

possession account shall not be commingled between the Debtor and any other

entity.

7.       For purposes of adequate protection, and to the extent of the use of

prepetition cash collateral in which the Secured Lender have a security interest, the

debtor is authorized to grant and shall be deemed to have granted to the Secured

Lender replacement liens, pursuant to 11 U.S.C. §§ 361, 363 and 552, in the debtor's

postpetition assets, whether now owned or hereafter acquired or arising, of the same

priority, dignity and effect as the prepetition liens, if any, on the prepetition property of

the debtor. The replacement liens granted by the debtor and approved by the Court

hereunder shall be deemed valid, perfected, enforceable and effective as of the Filing

Date without further action on the part of the debtor or the Secured Lender and without

the necessity for the execution or recordation of any financing statement, security

agreement or other instrument; provided, however, that the debtor shall execute and

deliver such documents and instruments as the Secured Lender may request to

evidence, conform, validate or perfect the security interests granted and approved by this Order.

8.       To the extent that the liens and security interests granted to the Secured Parties prove inadequate to fully protect the Secured Lender, giving rise to a claim allowable under 11 U.S.C. § 507(a)(2) by the Secured Lender for the use, replacement or diminution of the collateral, or for any diminution in the secured claim of the Secured Lender, the Secured Lender shall have, and shall be entitled to assert, any and all rights to the fullest extent available to the Secured Lender under 11 U.S.C. § 507(b).

9.       The debtor will continue to provide the reporting and inspection rights the Secured Lender is entitled to under any preexisting agreement and copies of all reporting provided to the United States Trustee.

10.      The debtor's authority to use cash collateral shall terminate immediately upon the appointment of a Chapter 11 Trustee or the dismissal of the debtor's Chapter 11 case or the conversion of the debtor's Chapter 11 case to a case under Chapter 7.

11.      The terms of the Stipulation for Use of Cash Collateral dated July __, 2014 between the Debtor and the Secured Lender are hereby approved.  Capitalized terms not defined in this Order shall have the meaning ascribed to them in the Stipulation.

12.      The Debtor's use of cash collateral subject to the Secured Lender's liens shall be subject to the following terms and conditions, which provide Secured Lender with adequate protection:

a.       The Debtor may use cash to pay ordinary and necessary business expenses and administrative expenses for the items, and in such use that will not

vary materially from that provided for in the budget and projections attached hereto as Exhibit A, except for variations attributable to expenditures specifically authorized by the United States Bankruptcy Court.

b.     The Debtor will grant Secured Lender a replacement lien, to the extent of the Debtor's use of cash collateral, in all of the Debtor's post-petition inventory, accounts, equipment, and general intangibles, and all other Collateral and mortgage previously identified in the Loan Documents referenced in the recitals herein, with such liens being given the same dignity, priority, extent, and effect as Secured Lender's pre-petition liens. The replacement liens set forth herein shall not affect or otherwise be secured by any subsequent turnover, preference, fraudulent conveyance actions, or other actions commenced or initiated under Chapter 5 of the Code.

c.     The Debtor will maintain insurance on all of its assets, collateral, real estate, and buildings, and will provide proof of insurance reasonably acceptable to Secured Lender, including declaration pages for general liability, property damage, workmans compensation, and all other coverage as may be required by Secured Lender.

d.     The Debtor will provide Secured Lender with such reports and documents as Secured Lender may reasonably request from time to time. Without limiting the generality of the foregoing, the Debtor will provide all reports and financial information provided by the Debtor to the Office of the United States Trustee at the same time they are delivered to the United States

Trustee, including additional information regularly kept by the Debtor in its normal course of operations including the following:

     i.     Updated accounts receivable and aging report as of the last day each month during the term of this Stipulation; and

     ii.     Updated balance sheet, profit and loss statement, cash flow summary, and general ledger reflecting the Debtor's payment of monthly expenses from all debtor in possession accounts maintained by the Debtor as of the last day of each month during the term of this Stipulation.

     e.     The Debtor will afford Secured Lender the right to inspect the Debtor's books and records and the right to inspect and appraise any part of its Collateral at any time during normal operating hours and upon reasonable notice to the Debtor and its attorneys.

     f.     Debtor will provide any documentation reasonably required by Secured Lender to verify assets, liabilities, and overall operations of the Debtor during the term of this Agreement.

     g.     Commencing with entry of the order approving this Stipulation and authorizing the Debtor's use of Cash Collateral and continuing thereafter for six (6) months, the debtor will remit a monthly payment to the Secured Lender in the amount of interest due to Secured Lender each month calculated at the rate of five percent (5%) per annum on the Prepetition Indebtedness, except for the Finance Agreement, Schedule 1 and Finance Agreement, Schedule 2, where

beginning with the payment due in September 2014, the Debtor will make full payments of principal and interest each month to the Secured Lender.

13.     The following shall be events of default:

a.     The Debtor defaults in performance of any obligation hereunder.

b.     The Debtor reports a net operating loss (exclusive of expenses associated with the bankruptcy proceeding, including, but limited to attorney fees and U.S. Trustee quarterly payments) for any 60 day continuous period of time contained in those reports that the Debtor will be providing to the United States and Secured Lender on a monthly basis and as required by the previous provisions of this Stipulation.

c.     The Debtor fails to maintain adequate insurance coverage for Secured Lender's Collateral.

d.     The Debtor fails to provide Secured Lender with the required financial documentation set forth herein on or before each due date, including, but not limited to, the monthly reports that the Debtor will be required to file with the United States Trustee's Office, and monthly balance sheets, profit and loss statements, cash flow summaries, account ledger reports, accounts receivable reports, accounts payable reports, and contract status reports

e.     The Debtor fails to timely file operating reports with the United States Trustee's Office.

f.     The Debtor fails to remit the monthly payment required herein in a timely manner.

g.     The Debtor fails to provide any financial information reasonably requested by Secured Lender during the term of this Stipulation or failure to provide Secured Lender with copies of filed state and federal tax returns on, or within, 10 days after they are filed with the appropriate governmental entities.

h.     The Debtor makes any payment outside of the ordinary course of its business, or exceeds use of cash collateral for any one month period of time in excess of 15% of the Debtor's monthly budget and projections as set forth on Exhibit A attached hereto and incorporated herein by reference, without first obtaining the prior written request of Secured Lender and confirmed by Court order.

i.     The Debtor's bankruptcy case is dismissed or converted.

j.     A Chapter 11 trustee is appointed.

k.     Any relief that may be granted in the Debtor's bankruptcy case which may cause irreparable harm to the rights of Secured Lender and its security interest in all of the assets of the Debtor.

l.     Any party in interest obtains an order granting it relief from the automatic stay to pursue rights and remedies against any asset in which Secured Lender has a security interest.

m.     Any party other than the Debtor files a plan of reorganization.

If any such event of default is not cured on or within five days of the Debtor and its counsel receiving written notice of such default, Secured Lender shall be

entitled to request expedited relief from the automatic stay to pursue its rights and remedies as a perfected secured creditor.

14.     Secured Lender has a valid and perfected first-priority lien on the Collateral and Cash Collateral, which is superior to any other lien or rights. Accordingly, as adequate protection for the use of the Collateral and Cash Collateral pursuant to sections 361 and 363(e) of the Bankruptcy Code, Lender is hereby granted:

15.     To the extent of any diminution in the value of Lender's interest in the Collateral resulting from the use of the Cash Collateral pursuant to this Order, a replacement lien on all of the assets and property presently owned or hereafter acquired by the Debtor or the Debtor's estate on and after the Petition Date (the "Post-Petition Collateral"), except avoidance actions under Chapter 5 of the Bankruptcy Code.  Such lien on the Post-Petition Collateral shall have the same validity and priority as its liens on the Collateral, effective as of the Petition Date, without the need for the execution or filing of any document or instrument otherwise to be executed or filed under applicable nonbankruptcy law, and shall have priority over any post-petition financing obtained pursuant to Bankruptcy Code § 364;

16.     To the extent of any diminution in the value of Lender's interest in the Collateral resulting from the use of the Cash Collateral pursuant to this Order, a superpriority administrative expense claim under Bankruptcy Code § 507(b), which shall have priority over all other administrative expenses in this Case; and

17.     Interest and fees, including reasonable attorney fees, shall accrue in accordance with the terms and provisions of the Loan Documents and as allowed by

applicable law.  During the period between the Petition Date and the Termination Date, Debtor shall make regular monthly interest payments to Lender pursuant to the Loan Documents.

18.     Nothing herein shall be deemed to be a consent by Lender to subordinate its secured claim to the administrative expenses of this bankruptcy proceeding or any superseding proceeding under the Bankruptcy Code, and nothing in this Order shall give rise to a finding of a surcharge of Lender or any portion of the Collateral pursuant to Bankruptcy Code § 506.  Moreover, Lender's failure to seek relief or otherwise exercise its rights and remedies under the Loan Documents or this Order shall not constitute a waiver of any of its rights hereunder, thereunder or otherwise.

19.     Debtor shall timely provide to Lender all periodic reports and information, including but not limited to reports regarding Collateral (specifically including at least a monthly listing and aging of accounts), financial statements, evidence of insurance, debtor-in-possession reports, all documents specified in any loan agreement between Lender and Debtor, and all other information reasonably requested by Lender to enable Lender to be informed regarding indebtedness and obligations owing to Lender by Debtor, the collateral securing same, and Debtor's operations. Lender shall be permitted to conduct an appraisal of the Debtor's equipment.  Debtor shall comply with Lender regarding the appraisal.

20.     Upon three-business days prior notice, representatives of Lender may conduct reasonable observations of Debtor's books, records, and operations, and interview officers and employees of Debtor, on Debtor's premises, at reasonable times

and in such manner as to not interfere with Debtor's ordinary operations.  Lender shall

be authorized to make and take away copies of any such books and records, unless

those documents are proprietary.  In such event, Lender will enter into a confidentiality

agreement with the Debtor prior to removing any such books and records.  Lender shall

not share with any third party any such copies absent written consent from the Debtor.

Without limitation, the parties acknowledge that such observations may include, upon

reasonable prior written notice, an audit by Lender's agents of Debtor's books and

records.   Debtor shall cause its accountants or bookkeepers to comply with any

reasonable request by Lender or its agents concerning preparation of appropriate

financial information and reports.  Unless otherwise subject to a privilege, Lender shall

share the results of any such audit with the Debtor.

21.     During the effective term of this Order, the Debtor shall:

a.      Pay, before they become delinquent, all fees required to be paid to

the United States Trustee during the pendency of this proceeding;

b.      Maintain and provide evidence of appropriate general liability and

insurance coverage for the Collateral;

c.      Timely file its financial operating reports and information with this

Court;

d.      Deliver to Lender on or before 12:00 a.m. (Eastern Time) on

Wednesday of each week (and if such day is not a business day, then the next

succeeding business day) (i) a comparison for the prior week of actual results of

all items contained in the Budget to the amounts originally contained in the

Budget, and (ii) a cumulative comparison for the period from the Petition Date through the end of the prior week of the actual results of all items contained in the Budget to the amounts originally contained in the Budget, in each case along with such supporting information as Lender may request;

e.     Maintain the existing cash management practices with respect to its accounts in effect prior to the Petition Date with respect to the Loans, security agreements and related agreements between the Debtor and Lender; and

f.     Comply with the Loan Documents, other than with respect to the events of default existing as of the Petition Date, as modified herein, or as prohibited by the Bankruptcy Code.

22.     In the event any other person or entity hereafter seeks an order from the United States Bankruptcy Court pursuant to §§ 361, 362, 363, 364, or 365 of the Bankruptcy Code, Lender shall be given notice hereof and Lender shall have an opportunity to be heard prior to the entry of any such order.

23.     Any sale of all or any portion of the Collateral shall be subject to Bankruptcy Code § 363 and Lender reserves its rights with respect to any such sale.

24.     Nothing contained herein shall preclude Lender or Debtor from making appropriate requests of this Court for such other or further relief as shall from time to time be necessary for adequate protection of Lender's interest, including its security interests in the Collateral.   Lender's agreement to the provisions herein shall not constitute an admission by Lender that Debtor should continue operation of its business or that there is a reasonable likelihood of Debtor's successful reorganization.   The

automatic stay provided by Bankruptcy Code § 362(a), to the extent applicable, shall be deemed vacated or modified as necessary to implement the provisions of this Agreement, but this provision shall not mean nor be interpreted to mean that Lender shall be entitled to foreclose on the Collateral without first obtaining an order under Bankruptcy Code § 362(d) with an opportunity for the Debtor to respond.

25.     Termination of the Debtor's right to use Cash Collateral shall in no manner affect the validity, enforceability, or priority of the claims, liens, or other protections accorded to Lender pursuant to the provisions of this Order or affect the ability of the Debtor to request expedited relief on the continued use of Cash Collateral.

26.     The provisions of this order and any action taken pursuant hereto shall survive entry of any order confirming a plan of reorganization, dismissing this proceeding or converting this proceeding to one under Chapter 7 of the Bankruptcy Code.  The terms and conditions of this order shall continue in full force and effect in this and any subsequent proceeding under the Bankruptcy Code.

27.     This order is immediately valid and fully and finally effective upon its approval and entry by the Court.

ENTERED:

_____
Michael E. Ridgway
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

MAPE USA, INC.,                                        Case No. 14-43123
                                                       Chapter 11
                        Debtor.

## MEMORANDUM OF LAW

The Debtor, through its undersigned counsel, submit this Memorandum of Law in support of its Motion for Order (I) Granting Expedited Relief; (II) Authorizing Debtor's to Use Cash Collateral on an Interim and Final Basis; and (III) Granting Adequate Protection ("Motion").  The preliminary hearing on the Motion has been scheduled for **August 4, 2014** and the final hearing is scheduled for **August 19, 2014**.

## FACTS

The factual basis for this Memorandum is set forth in the verified Motion and is incorporated as though fully set forth herein.  All capitalized terms not defined herein have the meaning ascribed in the Motion.

## LEGAL ARGUMENT

1.      <u>Use of Cash Collateral.</u>

11 U.S.C. §363(c)(2) provides that a debtor may use cash collateral only with the consent of each entity that has an interest in such cash collateral, or if the court, after notice and a hearing, authorizes such use.  Use of cash collateral must be restricted or conditioned as is necessary to provide adequate protection to any entity that has an interest in the property which the Debtor proposes to use.  11 U.S.C. §363(e).  In this case, Debtor requests approval of its use of cash collateral through October 31, 2014, to the extent necessary to operate its business in the ordinary course according to the Budget attached to the Motion.  As adequate protection, Debtor

proposes to grant replacement liens, make payments and maintain and insure the collateral as set forth in the motion.

In this connection, the Eighth Circuit Court of Appeals has stated:

> In any given case, the bankruptcy court must necessarily (i) establish the value of the secured creditor's interest, (ii) identify the risk to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (iii) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence.

*In re Martin*, 761 F.2d 472, 476-77 (8th Cir. 1985).  The adequate protection offered by Debtor satisfies the requirements imposed by the Bankruptcy Code and stated by the Eighth Circuit, and does not prejudice the rights of other creditors.

## CONCLUSION

For reasons set forth in the Motion and this Memorandum, Debtor respectfully requests that the Motion be granted.

Dated:  July 30, 2014                 RAVICH MEYER KIRKMAN McGRATH
                                       NAUMAN & TANSEY,
                                       A PROFESSIONAL ASSOCIATION

                                       By      /e/  Michael L. Meyer (72527)

                                       4545 IDS Center
                                       80 South Eighth Street
                                       Minneapolis, MN 55402
                                       (612) 332-8511

                                       ATTORNEYS FOR DEBTOR

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

---

In re:

MAPE USA, INC.,                                    Case No. 14-43123
                                                    Chapter 11

        Debtor.

---

## UNSWORN CERTIFICATE OF SERVICE

---

I, Michael L. Meyer, declare under penalty of perjury that on July 30, 2014, copies of Debtor's:

1.  Notice of Hearing and Motion for Order (I) Granting Expedited Relief; (II) Authorizing Debtor's to Use Cash Collateral on an Interim and Final Basis; and (III) Granting Adequate Protection;
2.  Memorandum of Law; and
3.  Proposed Order Authorizing Interim Use of Cash Collateral;

were served by sending to each party a copy thereof as noted on the attached Service List.

Dated: July 30, 2014          By: /e/   Michael L. Meyer (72527)

                               Ravich Meyer Kirkman McGrath
                               Nauman & Tansey, P.A.
                               4545 IDS Center
                               80 South Eighth Street
                               Minneapolis, MN 55402
                               (612) 332-8511

                               ATTORNEYS FOR DEBTOR

{00201459 }

ELECTRONIC
MAPE USA INC.
ATTN  GIUSEPPE PEDERZINI
315 GARFIELD STREET SOUTH
CAMBRIDGE MN 55008

ELECTRONIC
SARAH J WENCIL
UNITED STATES TRUSTEE
1015 US COURTHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS MN  55415

US ATTORNEY
600 U S COURTHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS MN 55415

MINN DEPT OF REVENUE
COLLECTION ENFORCEMENT
551 BANKRUPTCY / P O 64447
ST PAUL MN 55164

INTERNAL REVENUE SERVICE
ATTN PAT PATTON
SUITE 1222, STOP 5700
30 EAST SEVENTH STREET
ST PAUL MN 55101

IRS DISTRICT COUNSEL
650 GALTIER PLAZA
380 JACKSON STREET
ST PAUL MN 55101

ELECTRONIC
TEAM INDUSTRIES INC
ATTN STEVE KAST
1551 RICHWOOD ROAD
DETROIT LAKES MN 56501

ELECTRONIC
DAE-IL INDUSTRIAL CO LTD
ATTN JAMES WOO
302-JEONEUB-RI
DUSEO-MYEON
ULSAN CITY KOREA

ELECTRONIC
KOYO CORPORATION USA
ATTN SHARON AUNGST
P O BOX 644527
PITTSBURGH PA 15264-4527

ELECTRONIC
RUSS TIGER
7F-3, NO. 218, SEC. 1, WENSHI
N ROAD
TAICHUNG TAIWAN ROC

ELECTRONIC
QUALITY PRODUCTS AND CONCEPTS
ATTN  KEN BARTON
1 LAS OLAS CIRCLE 1417
FORT LAUDERDALE FL 33316

COMMAND CENTER
ATTN GLEN
P O BOX 951753
DALLAS TX 75395

ELECTRONIC
DEL CORONA & SCARDIGLI CANADA
2900 AVE ANDRE  STE 103
DORVAL QC
H9P 2P2
CANANDA

ELECTRONIC
FOREST CITY GEAR CO INC
ATTN  GENE FANN
11715 MAIN STREET
ROSCOE IL 61073

ELECTRONIC
MASTERSON STAFFING SOLUTIONS
ATTN  REBECCA PEARSON
505 HWY 169 NO  STE 700
PLYMOUTH MN 55441

ELECTRONIC
IKO INTERNATIONAL INC
MIDWEST OPERATION
500 E THORNDALE AVENUE  STE K
WOOD DALE IL 60191

NAGEL PRECISION INC
288 DINO DRIVE
ANN ARBOR MI 48103

ELECTRONIC
AEROTEK COMMERCIAL STAFFING
ATTN  TYLER BUSH
P O BOX 198531
ATLANTA GA 30384-8531

ELECTRONIC
FORGE CENTRO SUB SRL
LOC CAMPOTRINO ZONA
IND LE
66010 S MARTINO SM (CH)
ITALY

T & T TOOL INC
ATTN  PATTY
P O BOX 118
700 INDUSTRIAL BLVD
SPOONER WI 54801

ELECTRONIC
ADVANCED NITRIDING SOLUTIONS
1688 LAMMERS PIKE
BATESVILLE IN 47006

HOMMEL-ETAMIC AMERICA CORP
1505 W HAMLIN ROAD
ROCHESTER HILLS MI 48309

ELECTRONIC
NEW ULM PRECISION TOOL INC
ATTN  KELLY
2217 SOUTH BROADWAY
NEW ULM MN 56073-0517

ELITE TRANSPORTATION SYSTEMS
9101 DAVENPORT STREET NE
BLAINE MN 55449

ELECTRONIC
ADVANCED HEAT TREAT CORP
MIDPORT FACILITY – NITRIDING
ATTN LAURA BOHLEN
2825 MIDPORT BLVD
WATERLOO IA 50703

ELECTRONIC
NAVEGATE LOGISTICS
ATTN  JOE PELLETIER
1060 LONE OAK ROAD
EAGAN MN 55121

ELECTRONIC
BANK OF THE WEST
C/O WILLIAM P WASSWEILER
  LINDQUIST & VENNUM
80 SOUTH EIGHTH STREET  STE 4200
MINNEAPOLIS MN 55402

ELECTRONIC
BANK OF THE WEST
C/O JEFFREY D SMITH
LINDQUIST & VENNUM
80 SOUTH EIGHTH STREET  STE 4200
MINNEAPOLIS MN 55402

ELECTRONIC
GENERAL ELECTRIC CAPITAL CORP
C/O THOMAS J. LALLIER
FOLEY & MANSFIELD
250 MARQUETTE AVENUE  STE 1200
MINNEAPOLIS MN 55401

ELECTRONIC
WELLS FARGO EQUIPMENT FINANCE
C/O CHRISTOPHER A CAMARDELLO
WINTHROP & WEINSTINE
225 SOUTH SIXTH STREET  STE 3500
MINNEAPOLIS MN 55402

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

MAPE USA, INC.,                                    Case No. 14-43123
                                                   Chapter 11
              Debtor.

## ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL

This matter came on for hearing on Debtor's Motion for Order (I) Granting Expedited Relief; (II) Authorizing Debtor's to Use Cash Collateral on an Interim and Final Basis; and (III) Granting Adequate Protection (the "Motion") filed by Mape USA, Inc. (the "Debtor"). Appearances were noted in the record.  Based on the documents on file with the Court and the record and argument at the hearing,

IT IS ORDERED:

1.      The Debtor is authorized to use up to $160,753 of the cash collateral subject to the liens of Bank of the West (the "Lender") for the uses set forth on revised Exhibit B to the Motion through August 19, 2014, provided that no expenses that arose before the commencement of the case shall be paid unless otherwise permitted by order of this Court.

2.      As adequate protection to the extent of use of Lender's cash collateral, Debtor is authorized to grant to Lender replacement liens in Debtor's post-petition assets, which lien shall be in the same type of property with the same priority, dignity and effect as Lender's prepetition lien (the replacement lien is deemed to have been granted, effective and perfected, without any further act by any party) and make the payments to the Lender which are described in the motion.

{00201077 }

3.      The Debtor shall provide the Lender with reasonable access to its collateral for purposes of inspection, audit and appraisal.

4.      This Order is effective immediately.


Dated:

_____
Michael E. Ridgway
United States Bankruptcy Judge